IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 17, 2025 at Knoxville

## STATE OF TENNESSEE v. JASON PATRICK ODOM

**Appeal from the Criminal Court for Davidson County**
**No. 2022-B-741   Cheryl A. Blackburn, Judge**

_____

### No. M2024-01241-CCA-R3-CD

_____

The Defendant, Jason Patrick Odom, was convicted by a Davidson County Criminal Court jury of theft of property valued at $2,500 or more but less than $10,000, a Class D felony; burglary of a motor vehicle, a Class E felony; and vandalism of property valued at $1,000 or less, a Class A misdemeanor.  *See* T.C.A. §§ 39-14-103 (2018) (theft of property); 39-14-105 (2018) (grading of theft); 39-13-1002 (Supp. 2022) (subsequently amended) (burglary); 39-14-408 (Supp. 2022) (subsequently amended) (vandalism).  The trial court imposed concurrent sentences of twelve years for theft, six years for burglary, and eleven months, twenty-nine days for vandalism.  On appeal, the Defendant contends that (1) the evidence is insufficient to support his convictions and (2) the trial court erred by admitting a photograph into evidence.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TOM GREENHOLTZ, J., joined.

Nathan S. Moore, Nashville, Tennessee, for the appellant, Jason Patrick Odom.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Glenn Funk, District Attorney General; and Megan King and Matthew Atnip, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Defendant's convictions relate to the February 3, 2022 burglary of Savannah Schafer's vehicle.  Ms. Schafer testified that on February 2, 2022, at 8:20 p.m., she parked her white Mazda CX5 in the parking garage of a friend's apartment complex.  She said that her car locked automatically, and that the car contained numerous items because she was in the process of moving.  She said that when she returned to her car the next morning at

8:10 a.m., the left rear window was broken and the "door frame looked like it was pried a little bit." She said the paint was scratched and the frame was bent. She said that the cost to repair the window was $250 but that she did not have the door repaired.

Ms. Schafer testified that several items were missing from her car, including a work bag, which contained her Social Security card, passport, and wallet. She said that additional items missing from the car were her MacBook Pro computer, a stethoscope, a vacuum, blankets, four bags of groceries, and the spare car key fob. She stated that the work bag cost $100, that the computer cost $1,700, and that the spare key fob cost $300 to $400. She said her wallet, which cost $350, contained about $100 cash, gift cards valued at $1,000, a Wells Fargo debit card, a Chase debit card, and a Costco credit card. She estimated the value of the groceries at $300, the value of the vacuum at $30, and the value of the stethoscope at $100. She said her name was on one of the gift cards and on the Costco credit card. She stated that she did not give anyone permission to break into her car, damage the window, and take belongings from her car. She said some of the stolen items were never recovered.

Ms. Schafer testified that when she saw the damage to her car, she called 9-1-1 and that Officer Nicholas Smith responded to the scene and completed a report. She said that she canceled her debit and credit cards but that she received an email informing her that a person had attempted to use her Costco credit card at Dollar General. She said she informed Detective John Riddle about the attempted fraudulent charge.

A February 3, 2022 surveillance recording from the parking garage in which Ms. Schafer parked her car was received as an exhibit. In the recording, at 3:02 a.m., a red Jeep entered the garage, and the driver parked the Jeep. At 3:22 a.m., the driver left the Jeep. The driver was an African-American man with shoulder-length hair and facial hair, and he wore a dark green, hooded jacket, camouflage pants, and black shoes. As the man walked away from the Jeep, he pulled the jacket's hood over his head. The man walked between two vehicles, attempted unsuccessfully to open the doors to each vehicle, and walked away. The man walked to what was later identified as the victim's car. The man walked to the driver's door and was not visible in the recording for a few seconds. The man became visible in the recording again when he walked away from the victim's car. He returned to the Jeep and retrieved an object from the cargo area. The man attempted to open several vehicles before he returned to the victim's car. Headlights became visible in the recording, and the man lowered himself behind the car. The man walked to the rear driver's side door of the victim's car. At 3:37 a.m., the man removed bags from the victim's car and placed the bags inside the Jeep. The man returned to the victim's car, retrieved additional items from the victim's car, and placed the items inside the Jeep.

-2-

Referring to the surveillance recording, Ms. Schafer testified that the area in which she parked was open to the public. She identified her car parked inside the garage. She said that she did not know the person shown in the recording holding and moving items that had been inside her car.

Ms. Schafer identified four photographs, which were received as an exhibit. The photographs reflect the victim's car with a broken rear window. Ms. Schafer testified that the broken rear window was visible in the photographs, but the bent door frame was not visible. Ms. Schafer identified four additional photographs, which were received as an exhibit, and stated that the photographs showed her Costco credit card, the front and back of a Costco gift card, her Chase debit card, and a Shell gift card. She said all of the items were taken from her car. Referring to one of the photographs, she said that additional gift cards were visible in the photograph.

On cross-examination, Ms. Schafer testified that the work bag contained her Social Security card, passport, wallet, gift cards, spare key fob, and computer. She recalled that she had gift cards to Shell, Nordstrom, and a nail salon. She could not recall the businesses for the remaining gift cards. She said that she received approximately ten to fifteen gift cards for her birthday about one week before the offenses and that the amount of each gift card ranged between $75 and $100. She agreed that the $1,000 value to which she referred in her direct testimony was her estimate of the value of the gift cards.

Ms. Schafer testified that the car window was replaced the day after the offenses and that she paid for the repairs. She said that she did not purchase a key fob but that the responding police officer stated the cost to replace it would have been $300 to $400.

Metropolitan Nashville Police Department (MNPD) Officer Heather Fox testified that on February 3, 2022, at approximately 7:30 p.m., she and Officer William VanBergen had "an interaction" with the Defendant and that their body cameras recorded the encounter. She identified a photograph obtained from Officer VanBergen's body camera during the encounter and stated that the photograph, which was received as an exhibit, depicted the Defendant. The photograph reflects an African-American man with shoulder-length hair and facial hair and who wore a green jacket and camouflage pants. Officer Fox said that in addition to the Defendant's green clothes, he wore black Nike shoes. She said that the Defendant possessed Ms. Schafer's Costco credit card, a large quantity of gift cards, and car keys, which was consistent with the photographs identified during the victim's testimony. Officer Fox said that the Defendant stated he owned a red Jeep and that he walked her to the Jeep. A photograph obtained from Officer Fox's body camera was received as an exhibit and depicts a red Jeep inside a parking garage and a license plate with the first three digits K00.

Former MNPD Detective John Riddle testified that in February 2022, he investigated the present offenses. Mr. Riddle stated that he spoke with Ms. Schafer and that he investigated the attempted fraudulent use of a credit card at Dollar General. He said that the Dollar General location at which a person attempted to use Ms. Schafer's credit card was near the scene of the theft. He said that although Dollar General had security cameras, the quality of the recordings was too poor to identify the person.

Mr. Riddle testified that he and Detective Joyce reviewed the parking garage surveillance recording. Mr. Riddle said that he obtained a photograph of the Defendant and compared it to the person in the recording and that he concluded the Defendant was the person in the recording. Mr. Riddle said that he, likewise, reviewed the body camera recordings from Officers Fox and VanBergen's encounter with the Defendant on February 3, 2022. Mr. Riddle said the Defendant was depicted in the body camera recordings. Mr. Riddle said that the Defendant drove the same vehicle and wore similar clothes as he wore in the parking garage surveillance recording. Mr. Riddle noted that the Defendant wore camouflage shorts at the time of his arrest and wore camouflage pants at the time of the offenses. Mr. Riddle said that the Defendant wore the same green, hooded jacket with a red patch on the sleeve in both recordings.

Referring to the parking garage surveillance recording, Mr. Riddle testified that the red Jeep depicted was the same Jeep depicted in Officer Fox's body camera recording. Mr. Riddle said that the Defendant left the Jeep and that he wore black and gray Nike shoes. Mr. Riddle said that the Defendant returned to the Jeep, retrieved "something," and appeared to have checked the door handles on some of the vehicles parked in the garage. Mr. Riddle said that headlights from a vehicle were seen in the recording and that the Defendant "ducked behind" a vehicle. Mr. Riddle said that the Defendant walked to Ms. Schafer's car, retrieved items from her car, and placed the items inside the Jeep.

On cross-examination, Mr. Riddle testified that the surveillance recording from the parking garage showed the first three digits of the Jeep's license plate number, which were consistent with the license plate number depicted in the photograph obtained from Officer Fox's body camera recording. Mr. Riddle said that during the offenses, the Defendant "had his hood up, and then . . . put something white on his head." Mr. Riddle agreed that the Defendant did not wear anything white on his head during his encounter with Officer Fox.

MNPD Sergeant John Joyce testified that he obtained the parking garage surveillance recording, that he reviewed the recording, and that he recognized the Defendant as the person in the recording. Sergeant Joyce said that he had been familiar with the Defendant for several months at the time of the offenses.

-4-

Sergeant Joyce testified that he obtained a February 1, 2022 surveillance recording from Walgreens. He identified a photograph obtained from the recording, which was received as an exhibit. The photograph reflects an Africa-American man with shoulder-length hair and facial hair holding a basket, which contained merchandise, at the entrance and exit of the store. The man wore a green jacket, camouflage pants, and black and white Nike shoes. Referring to the photograph, Sergeant Joyce stated that it depicted the Defendant inside Walgreens. Sergeant Joyce said the Defendant wore black Nike shoes and camouflage pants, which were the pants worn by the Defendant in the parking garage surveillance recording at the time of the offenses. Sergeant Joyce said that the shoes depicted in the photograph from Walgreens were the same shoes depicted in Officer Fox's body camera recording.

On cross-examination, Sergeant Joyce testified that the photograph of the Defendant inside Walgreens showed the Defendant shopping and holding a basket. Sergeant Joyce agreed that the photograph showed the Nike emblem on the Defendant's shoes.

Upon this evidence, the jury found the Defendant guilty of theft of property valued at $2,500 or more but less than $10,000, burglary of a motor vehicle, and vandalism of property valued at $1,000 or less. The trial court imposed an effective twelve-year sentence in confinement. This appeal followed.

## I.     Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his convictions. Although he concedes the "crimes as alleged were certainly committed," he argues that the evidence failed to establish his identity as the perpetrator of the offenses. The State responds that the evidence sufficiently established the Defendant's identity. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"The identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Circumstantial evidence alone may be sufficient to establish the perpetrator's identity. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The identity of the perpetrator is a question of fact for the jury to determine. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt[.]'" *Rice*, 184 S.W.3d at 662 (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)).

Relevant to this appeal, "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters any . . . automobile . . . with intent to commit a felony, theft, or assault[.]" T.C.A. § 39-13-1002(a)(4). Burglary of an automobile is a Class E felony. *Id*. at (d). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id*. § 39-14-103(a). Theft of property valued at $2,500 or more but less than $10,000 is a Class D felony. *Id*. § 39-14-105(a)(3).

A person commits vandalism, in relevant part, when the person "knowingly . . . [c]auses damage to or the destruction of any . . . personal property of another . . . knowing that the person does not have the owner's effective consent[.]" *Id*. § 39-14-408(b)(1). Damage includes destruction of property and "tampering with property and causing pecuniary loss or substantial inconvenience to the owner[.]" *Id*. at (a)(1)(A), (B). A person who commits vandalism "shall be punished as for theft under § 39-14-105, after determining value under § 39-11-106." *Id*. at (c)(1)(A); *see id*. § 39-11-106(a)(39) (2018) (determining value). Vandalism of property valued at $1,000 or less is a Class A misdemeanor. *Id*. § 39-14-105(a)(1).

In the light most favorable to the State, the evidence reflects that in the early morning hours of February 3, 2022, the Defendant drove a red Jeep into a parking garage, walked through the parking garage, damaged the victim's car by breaking a window and tampering with the door, removed the victim's belongings, and placed the victim's belongings inside the Jeep. The Defendant had shoulder-length hair, facial hair, and wore a dark green, hooded jacket, camouflage pants, and black shoes. The victim did not consent to the Defendant's damaging her car or to the Defendant's taking her belongings. The belongings taken from the victim's car had an undisputed value that exceeded $2,500.

Within hours of the offenses, Officers Fox and VanBergen had an encounter with the Defendant, who wore the same clothes as he wore at the time of the offenses. Furthermore, Defendant showed the officers his vehicle, which was a red Jeep and which was consistent with the Jeep in the parking garage surveillance recording. During the encounter, the officers learned that the Defendant possessed the victim's Costco credit card and a large quantity of gift cards, which the victim identified as belonging to her. Sergent Joyce, who was familiar with the Defendant, testified that the Defendant was the person in the parking garage surveillance recording. Mr. Riddle, likewise, testified that after comparing a photograph of the Defendant with the person in the surveillance recording, he concluded that the Defendant was the person in the parking garage surveillance recording. The Defendant's appearance depicted in the photograph obtained from Officer VanBergen's body camera recording was consistent with the appearance of the person in the parking garage surveillance recording. As a result, we conclude that the evidence is sufficient to support the Defendant's conviction. The jury's verdict reflects that it rejected the Defendant's theory that he was not the perpetrator of the offenses in favor of the State's evidence demonstrating his identity as the perpetrator. We may not invade the province of the jury as the trier of fact. *See Bland*, 958 S.W.2d at 659.

Although the Defendant has not challenged the State's proof in connection with the remaining elements of the conviction offenses, we conclude, after review, that the evidence is sufficient to support the Defendant's convictions for felony theft, burglary, and misdemeanor vandalism. He is not entitled to relief on this basis.

## II.    Photograph Evidence

The Defendant contends that the trial court erred in admitting a photograph of him leaving Walgreens "with a basket of merchandise." He argues that the photograph is inadmissible pursuant to Tennessee Rule of Evidence 403 because it insinuated he was a thief and because any probative value was substantially outweighed by the danger of unfair prejudice. The State argues that the Defendant has waived appellate consideration of this issue by failing to object contemporaneously at the trial and by failing to include a transcript of the motion for a new trial hearing in the appellate record. The State asserts that the Defendant is not entitled to plain error relief because the photograph is relevant to identity due to its showing the Defendant wearing the same clothes as he wore during the offenses and because the photograph does not depict the Defendant engaged in criminal activity. The Defendant has not addressed the State's waiver argument in a reply brief. *See* T.R.A.P. 29.

Evidence is relevant and generally admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401, 402. Relevant evidence, however, "may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Questions regarding the admissibility and relevance of evidence generally lie within the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

The admission of a photograph as evidence is within the trial court's discretion. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

The record reflects that a photograph depicting the Defendant inside Walgreens approximately two days before the offenses was received as an exhibit. The parties do not dispute that the photograph depicts the Defendant. The photograph shows the Defendant holding a basket containing merchandise at the entrance and exit of the store. Sergeant Joyce testified that the Defendant's clothes in the photograph were consistent with the clothes worn by the Defendant in the parking garage surveillance recording. The Defendant did not object to admission of the photograph during the trial, and the record does not reflect that the Defendant filed a pretrial motion to exclude the photograph. *See* Tenn. R. Evid. 103(a)(1) ("Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected and . . . a timely objection . . . appears [in the] record, stating the specific ground of objection if the specific ground was not apparent from the record."); T.R.A.P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

However, in his motion for a new trial, the Defendant asserted that the trial court erred by admitting the photograph "for identification purposes" because it "clearly show[ed] the defendant leaving a retailer (Walgreens) with a shopping basket." Despite raising the issue in the written motion, the transcript of the motion hearing is not included in the appellate record. *See* T.R.A.P. 24(b); *see also State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (The Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal, which includes the obligation to have a transcript of the evidence or proceedings prepared). The trial court's order denying the motion for a new trial reflects that the court found that the Defendant did not present any argument in the written motion or at the motion hearing "as

to why this photograph should not have been admitted." The court determined, as a result, that it could not "grant relief based on this unspecified allegation of error." The Defendant argues for the first time on appeal that the trial court erred by admitting the photograph because it insinuated he was a thief and because any probative value of the photograph was substantially outweighed by the danger of unfair prejudice.

The record reflects that the Defendant did not contemporaneously object to the admission of the photograph at the trial, did not provide any legal authority in the written motion for a new trial supporting exclusion of the photograph, and did not include a transcript of the motion hearing in the appellate record. As a result, we conclude that the Defendant has waived plenary review of this issue. We, likewise, decline to review the issue for plain error because consideration of the issue is not necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000); *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). Nothing in the record reflects that the Defendant was accused of criminal activity while inside Walgreens. Furthermore, the evidence, even without the photograph, supported the jury's determination that the Defendant was the perpetrator of the offenses and was sufficient to support his convictions. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE